UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kimberly A. Ruff Bedard

    v.                                          Civil No. 11-cv-117-JL
                                                Opinion No. 2011 DNH 077
Mortgage Electronic Registration
Systems, Inc. *et al.*

## SUMMARY ORDER

This case raises the question of how to determine, for purposes of diversity jurisdiction, the amount in controversy in an action to enjoin the foreclosure of a mortgage. The plaintiff, Kimberly A. Ruff Bedard, has sued the purported assignor and assignee of her mortgage, defendants Mortgage Electronic Registration Systems, Inc. ("MERS") and HSBC Bank USA, N.A. ("HSBC"), and the servicing company, American Home Mortgage Servicing, Inc. ("AHMSI"), to enjoin them from proceeding with an announced foreclosure sale of her home in Ossipee, New Hampshire.

According to Bedard's complaint and its attached documentation, she took out a $100,000 mortgage loan in July 2006 from American Home Mortgage Corp., which subsequently sold its servicing operations to AHMSI. In July 2009, "after enduring a series of financial hardships," Bedard "began pursuing loan modification with AHMSI," which directed her to apply for the federal Home Affordable Modification Program, or "HAMP." This

resulted in her entry into a "Trial Period Plan Agreement," under which, Bedard says, her monthly payments were reduced from $961.77 to $563.94. She then received a letter from AHMSI notifying her that she had been denied entry into HAMP, but she says, was instructed to "disregard the notice" and "to continue making the modified payments" in a subsequent telephone conversation with an AHMSI customer service representative.

Bedard nevertheless went on to receive another notice telling her that her loan would not be modified, followed by a notice claiming that she was more than $11,500 in arrears, "most of which represented the difference" between the original and modified monthly payments. She then received a notice of foreclosure, followed by a notice of foreclosure sale. See N.H. Rev. Stat. Ann. § 479:25.

Bedard responded by bringing this action in Carroll County Superior Court. Her complaint challenges the validity of the foreclosure on several grounds, including that (1) she was placed in default even though she had been making most of the modified payments to which AMHSI had allegedly agreed, (2) though MERS claims to have assigned the mortgage to HSBC prior to commencing the foreclosure, that assignment was void because "MERS had no legal authority to assign the mortgage," and (3) the foreclosure notice failed to comply with certain requirements of § 479:25,

i.e., it was neither published in a newspaper nor served upon Bedard by registered or certified mail.

The complaint also asserts a claim under the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A, alleging that AHMSI made false and misleading representations about its loan modification program and that, as a result, Bedard "suffered substantial injuries and losses." In addition to a "temporary restraining order and permanent injunction" against the foreclosure, the complaint requests "a determination of the current owner" of Bedard's property and "damages in an award as much as three times, but not less than two times, the amount of actual damages or $1,000, whichever is greater" as authorized by N.H. Rev. Stat. Ann. § 358-A:10, I (capitalization and parentheticals omitted).

After receiving Bedard's complaint, the Superior Court issued an ex parte temporary restraining order--and later, with the defendants' assent, a preliminary injunction--against the foreclosure. MERS and AHMSI then filed a notice removing the action to this court.[1] See 28 U.S.C. § 1446. The notice invoked

---

[1]The notice of removal stated that, so far as MERS and AHMSI knew at that point, HSBC had yet to be served. In fact, HSBC had been served prior to the notice of removal, but that has no effect on its validity. First, while all defendants must join in the notice of removal, that may be effectively accomplished by joining in the other defendants' objection to a motion to remand,

diversity jurisdiction, alleging that each of the defendants was a foreign corporation with its principal place of business outside of New Hampshire, and that, because the complaint sought relief "based on a loan . . . in the amount of $100,000 and a mortgage which secured payment of that loan," the amount in controversy exceeded $75,000.  See id. § 1332(a)(1).

Bedard has moved to remand, see id. § 1447(c), arguing that diversity jurisdiction does not lie because the amount in controversy does not exceed $75,000.  As Bedard points out, where a defendant's removal of a case to federal court is challenged on that basis, the defendant has the burden to show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum (at least where, as here, the plaintiff's complaint does not demand any particular sum).  See, e.g., Evans v. Yum Brands, Inc., 326 F. Supp. 2d 214, 219-220 (D.N.H. 2004); cf. Amoche v. Guar. Trust Life Ins. Co., 556 F.3d 48-49 (1st Cir. 2009) (applying this standard to a removal under the Class Action Fairness Act, 28 U.S.C. § 1332(d)).

---

which HSBC has done.  See Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 75-77 (1st Cir. 2009).  Second, Bedard does not invoke the failure of all defendants to join in the notice of removal as a basis for remand, which means any such defect has been waived anyway.  See id. at 75.

4

Bedard argues that the defendants have not carried this burden because they rely solely on her complaint, which does not request damages in excess of $75,000, but "[c]oncentrates on injunctive relief and statutory damages for [the defendants'] unfair acts and practices . . . which, no matter how calculated, do not exceed" $75,000.  Even if this were an accurate characterization of Bedard's claim for damages, however, her argument ignores the value of injunctive relief in calculating the amount in controversy.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).  One (if not necessarily the only) way to take that measure is to assess "the value of the right [the plaintiff] seeks to vindicate."  Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 89 (1st Cir. 1991).

Bedard seeks an injunction against the announced foreclosure sale.  Should the defendants proceed with the sale, she will lose her asserted right to continue occupying the property.  As one court has observed, "this right is invaluable" to most homeowners, but "fair market value is as accurate a measure as any of its worth."  Gatter v. Cleland, 87 F.R.D. 66,

5

69 (E.D. Pa. 1980). The fact that the original amount of the mortgage loan, made in July 2006, was $100,000, suffices to show by a preponderance of the evidence that the fair market value of Bedard's property exceeded $75,000 at the time this action was removed, even if the intervening decline in the real estate market is taken into account. Bedard has not come forward with anything suggesting that her home is worth less than $75,000.

A number of courts have ruled that, in a case seeking equitable relief against a foreclosure sale, the fair market value of the property is an acceptable measure of the amount in controversy for purposes of diversity jurisdiction. See, e.g., Garfinkle v. Wells Fargo Bank, 483 F.2d 1074, 1076 (9th Cir. 1973); Kehoe v. Aurora Loan Servs. LLC, No. 10-256, 2010 WL 4286331, at *3-*4 (D. Nev. Oct. 20, 2010); Martinez v. BAC Home Loans Servicing, LP, ___ F. Supp. 2d ___, 2010 WL 6511713, at *12 (W.D. Tex. Sept. 24, 2010); Reyes v. Wells Fargo Bank, N.A., No. 10-1667, 2010 WL 2629785, at *4-*6 (N.D. Cal. June 29, 2010); Mapp v. Deutsche Bank Nat'l Trust Co., No. 08-695, 2009 WL 3664118, at *4 (M.D. Ala. Oct. 28, 2009); Garland v. Mortg. Elec. Registration Sys., Inc., Nos. 09-71 et al., 2009 WL 1684424, at *2-*3 (D. Minn. June 16, 2009); Roper v. Saxon Mortg. Servs., Inc., No. 09-312, 2009 WL 1259193, at *2 (N.D. Ga. May 5, 2009); Milligan v. Chase Home Finance, LLC, No. 08-32, 2009 WL 562219,

at *4 (N.D. Miss. Mar. 4, 2009); Gatter, 87 F.R.D. at 69.[2]  This court agrees with these rulings.  Cf. Hersey v. WPB Partners, LLC, No. 10-486, 2011 WL 587959, at *2 (D.N.H. Feb. 8, 2011) (observing that, in case originally brought to block a foreclosure against a property worth more than $200,000, the amount in controversy would have exceeded $75,000, but for the fact that the plaintiff had since disavowed that claim) (McCafferty, M.J.).  Bedard does not provide any authority or argument to the contrary or, indeed, acknowledge that injunctive relief has value for purposes of calculating the amount in controversy.  Her motion to remand[3] is DENIED.

---

[2]There are decisions to the contrary.  One reasons that, where a mortgagor "is not challenging the validity" of the loan or mortgage but "merely disputes that defendants are the ones having the right to enforce those documents," using the value of the property as the amount in controversy is not appropriate. Ballew v. America's Servicing Co., No. 11-030, 2011 WL 880135, at *5 (N.D. Tex. Mar. 14, 2011).  This appears to overlook the practical reality that, if the parties who are attempting to enforce the plaintiff's mortgage do not have the right to do so, then there is very likely no one to be found who does.  In any event, the reasoning of Ballew would not apply here, where Bedard also challenges the validity of the foreclosure on the ground that she is not even in default because she has made the payments required under the alleged modification agreement.  A few other decisions hold that the amount in controversy equals only the amount of the plaintiff's equity in the mortgaged property.  See, e.g., Sanders v. Homecomings Fin., LLC, No. 08-369, 2009 WL 1151868, at *3 (M.D. Ala. Apr. 29, 2009).  In this court's view, however, those decisions overlook the value to the plaintiff in continuing to occupy his property.  See Gatter, 87 F.R.D. at 69.

[3]Document no. 8.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 11, 2011

cc:  John P. Kalled, Esq.
     Geoffrey M. Coan, Esq.
     Paula-Lee Chambers, Esq.